1  IRELL & MANELLA LLP
   John C. Hueston (164921) *jhueston@irell.com*
2  Steven A. Marenberg (101033) *smarenberg@irell.com*
   Alison L. Plessman (250631) *aplessman@irell.com*
3  Steven N. Feldman (281465) *sfeldman@irell.com*
   Susannah M. Rooney (293493) *srooney@irell.com*
4  1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067-4276
5  Telephone:    (310) 277-1010
   Facsimile:    (310) 203-7199
6
7  Attorneys for Plaintiffs

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11 PAOLO MORENO, an individual;        Case No. CV14-0880 RSWL-CWx
   LAWRENCE VAVRA, an individual;
12 and GABRIEL MORENO, an               COMPLAINT FOR:
   individual,
13                                      1. BREACH OF JOINT
                                           VENTURE/PARTNERSHIP
14              Plaintiffs,                 AGREEMENT

15        vs.                           2. BREACH OF IMPLIED JOINT
                                           VENTURE/PARTNERSHIP
16                                         AGREEMENT

17 SFX ENTERTAINMENT, INC., a          3. BREACH OF FIDUCIARY DUTY
   Delaware corporation with offices in     OWED TO JOINT
18 California; ROBERT F.X.                   VENTURERS/PARTNERS
   SILLERMAN, an individual;
19 SHELDON FINKEL, an individual,      4. CONSTRUCTIVE FRAUD

20                                      5. BREACH OF CONTRACT
                Defendants.
21                                      6. BREACH OF IMPLIED
                                           CONTRACT
22
                                       7. PROMISSORY ESTOPPEL
23
                                       8. FRAUDULENT INDUCEMENT
24
                                       9. PROMISSORY FRAUD
25
                                       10. UNFAIR COMPETITION –
26                                         VIOLATION OF BUS. & PROF.
                                           CODE §§ 17200 ET SEQ.
27
                                       11. QUANTUM MERUIT
28
                                       12. BREACH OF FIDUCIARY
                                           DUTY OWED TO PRINCIPALS

                                       13. INTERFERENCE WITH
                                           PROSPECTIVE ECONOMIC
                                           ADVANTAGE

                                       DEMAND FOR JURY TRIAL

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145                          COMPLAINT

1    Plaintiffs PAOLO MORENO ("PAOLO"), LAWRENCE VAVRA

2   ("VAVRA"), and GABRIEL MORENO ("GABRIEL") (collectively "Plaintiffs"),

3   by and through their attorneys, make the following allegations against Defendants

4   SFX ENTERTAINMENT, INC. ("SFX"), ROBERT F.X. SILLERMAN

5   ("SILLERMAN"), and SHELDON FINKEL ("FINKEL"):

6                         **INTRODUCTION**

7      1.     On October 9, 2013, Defendant SFX raised $260 million in an initial

8   public offering that valued the company at more than $1 billion.  What the

9   company's SEC filings failed to disclose was that much of the value of the enterprise

10  was not the result of the knowledge or acumen of SFX's CEO and Chairman,

11  Sillerman, or Vice Chairman, Finkel, but rather the vision and enterprise of three

12  men, Plaintiffs Paolo and Gabriel Moreno and Lawrence Vavra.

13      2.     In early January 2012, Plaintiffs, together with their colleague Donnie

14  Estinopal ("Estinopal"), met with Sillerman to present the plan for a venture that

15  would identify, acquire, consolidate, and operate assets in the electronic dance

16  music ("EDM") industry.  In and after these meetings, Plaintiffs and Sillerman

17  agreed to "partner" in the venture that is now known as SFX.  In concept, the

18  Morenos and Vavra were to use their contacts, skills, and experience in EDM to

19  consolidate the fragmented industry through a series of acquisitions.  Sillerman, who

20  by his own admission "kn[e]w nothing about EDM," was to provide the financing

21  for the venture.

22      3.     Plaintiffs and Sillerman came to a firm deal that granted Plaintiffs

23  millions of "founders' shares" in the enterprise, along with options, cash

24  compensation, and control of the company.  Sillerman unambiguously confirmed

25  this in e-mails, stating "We have a deal."  Over a year later, just before the initial

26  public offering ("IPO"), Sillerman's representatives reiterated in writing, "we need

27  to sign up the commitments made to you long ago."

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 2 -

COMPLAINT

4.     It is apparent that Plaintiffs performed their part in the venture. Until they were forced out by Sillerman and Finkel, Plaintiffs worked full-time on the venture's behalf to close its most important and lucrative acquisitions. In fact, of the eight "principal assets" identified by SFX's S-1 SEC filing in support of its IPO, seven were acquired in deals identified and facilitated by Plaintiffs. Indeed, Plaintiffs' EDM connections provided SFX with unique access into the insular EDM world—access that Sillerman and Finkel never would have had on their own. Further, Plaintiffs' efforts were integral to the conceptual development and enactment of an EDM industry consolidation, and it is Plaintiffs' contributions that formed the foundation of what is now SFX.

5.     Yet, instead of honoring their commitments, Sillerman and Finkel engaged in a deliberate and deceptive scheme to deprive Plaintiffs of their rightful ownership stake in, and control of, the venture that they created and built. Sillerman and Finkel have not only misappropriated the value of Plaintiffs' hard work and expertise, but have reaped huge financial benefits from their scheme. As described in SFX's S-1 filing, Sillerman currently owns 57% of the venture; Finkel owns 2%. Moreover, Sillerman and Finkel have lavished themselves with compensation that investment analysts have called "ludicrous" and "massive," paying themselves $15 million and $7 million in 2012, respectively.

6.     In this lawsuit, Plaintiffs seek the value of their interests in the venture—a sum to be proven at trial, but one that, based on the IPO price of the company, easily exceeds $100 million. Plaintiffs also seek compensatory and punitive damages and equitable relief from Defendants for their tortious conduct, as alleged further in this Complaint.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Plaintiffs Paolo, Vavra, and Gabriel are citizens of the State of California. Defendant SFX is a corporation incorporated under the laws of the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 3 -

COMPLAINT

1 State of Delaware and having its principal place of business in the State of New

2 York.  Defendants Sillerman and Finkel are citizens of the State of New York.  The

3 amount in controversy exceeds $75,000, exclusive of interests and costs.

4     8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)

5 because a substantial part of the events or omissions giving rise to this action have

6 occurred and/or will occur in this District.

7 **PARTIES**

8     9.     Plaintiff Paolo Moreno is a founder of SFX.  Paolo, along with Gabriel

9 and Vavra, spent nearly two years creating the business plan that is now known as

10 SFX before presenting the plan to Sillerman and other potential equity sponsors in

11 late 2011 and 2012.  By leveraging his experience and connections at the top

12 echelon of the EDM industry—including his experience serving as business

13 manager to one of the most prominent figures in the industry, Estinopal—Paolo

14 successfully facilitated the execution of Plaintiffs' business plan and played an

15 instrumental role in the formation of SFX.  Paolo is, and at all times relevant was, a

16 citizen of California, residing in Los Angeles County.

17     10.    Plaintiff Lawrence Vavra is a founder of SFX.  Vavra is also the Co-

18 Founder and President of the management company, Deckstar, which is one of the

19 most important artist management companies in the EDM industry.  Vavra was

20 named one of the "50 Most Powerful People in EDM" in 2013 by inthemix.com, an

21 online EDM community.  Vavra is, and at all times relevant was, a citizen of

22 California, residing in Los Angeles County.

23     11.    Plaintiff Gabriel Moreno is a founder of SFX.  Gabriel has deep roots

24 in the EDM industry and, over the past decade, has developed relationships with its

25 most important and influential players.  Gabriel harnessed his network to provide

26 SFX with the unprecedented access it needed to become the billion-dollar company

27 it is today.  Gabriel's knowledge of the inner-workings of the EDM world was

28 instrumental in developing and executing Plaintiffs' strategy and business plan to

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 4 -

COMPLAINT

1 | create the company now known as SFX. Gabriel is, and at all times relevant was, a
2 | citizen of California, residing in Los Angeles County.

3 |       12.     Defendant SFX is a Delaware corporation with its principal place of
4 | business in New York, New York. SFX's website lists an office at 2058 Broadway
5 | in Santa Monica, California in the County of Los Angeles, California. Upon
6 | information and belief, SFX transacts significant business in the State of California,
7 | and in particular, the County of Los Angeles, California. Through a series of
8 | mergers, acquisitions, and restructurings, SFX is a successor in liability and has
9 | acquired, assumed, and incurred all liabilities and obligations for any of its
10 | predecessors, selling companies, and/or assignors involved in the claims at issue
11 | here.

12 |       13.     Defendant Sillerman is, and at all times relevant was, a citizen of New
13 | York. On information and belief, he transacts and conducts business in the State of
14 | California, and in particular, the County of Los Angeles, California. Sillerman is
15 | Chairman and CEO of SFX.

16 |       14.     Defendant Finkel is, and at all times relevant was, a citizen of New
17 | York. On information and belief, he transacts and conducts business in the State of
18 | California, and in particular, the County of Los Angeles, California. Finkel is Vice
19 | Chairman of SFX.

20 | **GENERAL ALLEGATIONS**

21 | **A. The Rise of EDM and Plaintiffs' Business Plan to Consolidate the**
22 | **Industry**

23 |       15.     Since 2009, the global market for EDM has grown dramatically.
24 | According to news reports, attendance at the top 20 EDM festivals increased from
25 | 1.9 million in 2009 to over 3.4 million in 2013 and EDM digital revenues grew
26 | 9.8% in 2012. The global market for EDM is projected to be approximately
27 | $4.5 billion in 2013.

28 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 5 -

COMPLAINT

16.     In the midst of this explosive growth, in 2010 and 2011, Plaintiffs began developing a business strategy to consolidate the fragmented EDM industry. Their strategy relied upon Plaintiffs' unique connections, insight, and knowledge of the EDM industry.

17.     During this time, a mutual friend introduced Paolo and Finkel, a well-known boxing manager who at the time was CEO of Empire Sports and Entertainment, and Plaintiffs introduced Finkel to the EDM industry. Plaintiffs began shopping their business strategy to potential investors and partners, and garnered a tremendous response. Several high profile investors approached Plaintiffs, and were interested in financing their plan. This interest was not surprising, given what Plaintiffs were offering to investors: a chance to invest in a company that would have an inside track to the most important and influential artists and promoters in the EDM industry.

18.     In the latter half of 2011, Plaintiffs, working together with Estinopal, finalized their plan and prepared investment presentations reflecting key elements of the strategy. This strategy specifically identified two initial steps: (1) acquiring Disco Donnie Presents, and (2) acquiring Dayglow (n/k/a Life in Color). These initial investments would serve as a foundation, enabling a series of additional key acquisitions that would develop the company into an EDM powerhouse. Plaintiffs continued in discussions with investors to determine the best strategic partner to finance the plan.

19.     In and around December 2011, Plaintiffs authorized Finkel to work on their behalf to help them partner with the right investor. They provided him with confidential information about the specifics of their business plan and added his name to certain of the presentation materials. On or around January 3, 2012, Finkel met with Sillerman privately to discuss the potential for Sillerman to invest in Plaintiffs' vision. Subsequently, Finkel suggested to Plaintiffs that Sillerman could be the right strategic investor for their new business. Sillerman was looking for an

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 6 -

COMPLAINT

1   avenue to return to the music industry, and, although he knew nothing about EDM,

2   he was quite enthusiastic about the prospect of discussing Plaintiffs' business plan

3   with them.  Believing Finkel to be acting in their best interests, Plaintiffs agreed to

4   meet with Sillerman.

5   **B.  "We Have a Deal": Sillerman and Plaintiffs Agree to Co-Found a New**

6       **Venture and to Lucrative Management Agreements**

7       20.    On January 5, 2012, Paolo, on behalf of himself and the other

8   Plaintiffs, met with Sillerman and Finkel, among others, in Sillerman's New York

9   City Office.  During the meeting, Paolo provided documents marked "confidential"

10  to Sillerman setting forth details of a confidential business strategy and outlined

11  Plaintiffs' detailed and confidential business and acquisition plan for enacting this

12  strategy.  Although Sillerman told Plaintiffs he knew nothing about the EDM

13  industry, he also communicated to them his excitement over what he believed to be

14  a valuable business opportunity.  More specifically, during their meeting—which

15  lasted six hours—Sillerman stated that he never thought an "opportunity like this"

16  would come his way again.  During this meeting, Sillerman represented that he

17  could, and would, provide all of the financing necessary to fund the business plan

18  and that Plaintiffs would work to negotiate and close the planned deals on behalf of

19  the venture.  To induce Plaintiffs to enter into a venture with him, Sillerman

20  represented to Plaintiffs that he was in a position to supply sufficient capital to

21  support their business plan.  Plaintiffs and Sillerman discussed the terms of their

22  mutual venture.  They agreed to work together under the venture to develop a

23  corporate structure that would effectuate the plan to consolidate the industry.

24  Sillerman told Paolo that Plaintiffs should start moving quickly to close the planned

25  acquisitions.  Further, he told Paolo to discontinue any negotiations with other

26  interested investors.

27      21.    Over the next 72 hours, Sillerman and Paolo exchanged e-mails

28  reflecting terms of their mutual venture.  Sillerman and Plaintiffs would together

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 7 -

COMPLAINT

1  enact the business plan.  Sillerman told Plaintiffs that they should take the lead in
2  facilitating the acquisition of the primary assets, with Sillerman providing the
3  necessary financing for those acquisitions.  Sillerman promised that Plaintiffs would
4  receive millions of "founders' shares," as well as guaranteed annual stock options
5  and lucrative compensation packages.  During these negotiations, Sillerman
6  emphasized to Paolo that Plaintiffs could "take control of our new Electronic music"
7  venture.  As co-owners, Plaintiffs and Sillerman would share in the profits and
8  losses of the company.

9      22.    On January 7, 2012, Paolo wrote Sillerman, "MY TEAM AND I ARE
10  FULLY IN %100.  Let's put the lawyers in contact now to paper this up.  *We are*
11  *officially partners ...*."  Sillerman responded, "*Deal.*"

12      23.    The next day, Paolo e-mailed Sillerman summarizing the terms of their
13  agreement: Plaintiffs would receive 2.5 million "founders' shares," lucrative
14  compensation packages, additional bonuses and other incentives.  To induce
15  Plaintiffs to accept lower cash compensation terms in the form of salary and benefits
16  than they otherwise would have required, Sillerman told Plaintiffs that they would
17  "make more than [they could] imagine" through their ownership stakes.

18      24.    In reliance on these representations, Paolo replied to Sillerman, "I just
19  want to look back and know *when this company we build* into a 250mm 500m or
20  1bn or 2bn or more like 4.4bn company, that me and my team are really taken care
21  of."  Paolo also stated to Sillerman that Plaintiffs would make this joint venture their
22  "sole project 24/7/365 to make this a home run for all of us."  Plaintiffs and
23  Sillerman planned to work together in a joint venture to create, own, and operate a
24  profitable corporation.

25      25.    Sillerman again confirmed their agreement on January 8, 2012,
26  responding to the foregoing by stating, in writing: "*We have a deal.*"

27      26.    After this confirmation, on or about January 9, 2012, Sillerman met
28  with Vavra, Estinopal, Paolo, and Finkel, and reiterated his belief in Plaintiffs'

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1 business plan and the goals of the joint venture. He again asserted his promise that

2 he would supply funding for the joint venture, that Plaintiffs would take charge of

3 making the key acquisitions, and that they would all work together as partners to

4 create an EDM empire.

5     27.    Upon information and belief, Sillerman did not intend to honor the joint

6 venture agreement and other representations that he made to Plaintiffs during the

7 meetings and e-mail exchanges. To the contrary, Sillerman intended for Plaintiffs to

8 rely on these agreements and representations, enabling Sillerman to appropriate

9 Plaintiffs' business strategy and network of EDM industry contacts for himself.

10 Indeed, relying on Sillerman's agreements and representations, Plaintiffs provided

11 SFX with, among other things, unparalleled access into the insular EDM world by

12 vouching for Sillerman's credibility, financial solvency, and trustworthiness.

13     28.    Had they known that Sillerman's true intentions were to use Plaintiffs'

14 strategy, information, connections, and access for his own gain, without granting

15 Plaintiffs any significant ownership interest in the venture, Plaintiffs would not have

16 entered into any agreement with Sillerman, and would not have undertaken to

17 execute on the strategy for the benefit of SFX. Indeed, Plaintiffs turned down other

18 lucrative options with other investors to pursue the venture with Sillerman.

19     29.    During the conversations between Plaintiffs, Sillerman, and Finkel,

20 Sillerman persuaded Plaintiffs to use the name "SFX" for the new venture, a name

21 Sillerman had used years earlier for a different purpose. He had recently regained

22 the right to use the name under the terms of a long-term, non-compete contract.

23 Sillerman told Plaintiffs that using the SFX name would help their new venture gain

24 momentum and credibility more quickly than alternative names, and would

25 ultimately increase the stock price when the company went public. Ultimately,

26 Plaintiffs agreed, believing that Sillerman was their partner and that any goodwill

27 associated with the SFX brand could benefit the venture.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

### C. Plaintiffs Immediately Launch SFX, Facilitating and Closing Major Acquisitions

30.     Following their agreements, Plaintiffs—at Sillerman's request—"took control" and began executing on their business and acquisitions strategy. Plaintiffs worked constantly, traveling around the country to facilitate and close deals for SFX at their own expense. As part of these efforts, they arranged for Sillerman and Finkel to meet key individuals in the EDM community—something Sillerman and Finkel had no hope of doing without Plaintiffs' contacts and efforts. Indeed, while other companies made attempts to close the same acquisitions and were unable to do so, Plaintiffs were able to negotiate lucrative acquisitions based on their strategy and network of industry professionals.

31.     Acting in his role as the supposed financier, Sillerman relished delegating the managerial role to Plaintiffs. As Sillerman told *Billboard Magazine* in September of 2012, "*I know nothing about EDM, I really don't*...But I sit in the meetings, to the extent that they are [meetings]. I meet the people whose places we're buying. And *I haven't a fucking clue what they do or what they're talking about. Not a clue.*"

32.     In the first half of 2012, Plaintiffs closed the venture's acquisition of Disco Donnie Presents—run by Estinopal, who was described as the "godfather" of the EDM movement—in accordance with Plaintiffs' business plan. Estinopal had been the largest EDM talent buyer nationwide for the past eighteen years and had dominated a majority of all U.S. EDM markets. Sillerman described this acquisition as the venture's first step to gaining "an initial presence in the EDM business." In particular, Sillerman told *The New York Times* that this acquisition was the "first" acquisition for the "new company," and that SFX planned "to spend $1 billion on acquisitions within a year" and then make an IPO in the summer of 2013. Plaintiffs also acquired Dayglow (n/k/a Life in Color) for SFX, the highly successful indoor

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 10 -

COMPLAINT

1  EDM festival series.  As Plaintiffs envisioned, these assets provided SFX with the

2  building blocks of an EDM empire.

3       33.    Following these key acquisitions, through Plaintiffs' efforts and

4  methodical execution of their business strategy, SFX was able to acquire a large

5  number of major EDM assets that dramatically increased the value of SFX and

6  allowed the company to be in a position to go public.  At all times, Plaintiffs

7  pursued the goals of the joint venture to develop key assets and create a public

8  corporation that capitalized on the lucrative EDM industry.

9       34.    SFX's S-1 filing states that SFX currently has eight "principal assets":

10           a.      Beatport, LLC;

11           b.      Disco Donnie Presents;

12           c.      ID&T;

13           d.      i-Motion GmbH Events & Communication;

14           e.      Life in Color;

15           f.      Made Event, LLC;

16           g.      MMG Nightlife LLC; and

17           h.      Totem Onelove Group.

18       35.    Every single one of these acquisitions, other than i-Motion, was

19  accomplished in deals directly facilitated by Plaintiffs.  Without Plaintiffs' business

20  plan, work, and unique relationships, SFX would not have been able to acquire these

21  "principal assets," or indeed even conceive of a large scale consolidation of the

22  EDM industry.

23       36.    Notably, on many occasions, closings of the transactions were delayed

24  because Sillerman was unable to supply sufficient and timely financing for the

25  deals, despite his assurances to the contrary.  These delays adversely affected the

26  venture's ability to attract new acquisitions and adversely impacted Plaintiffs'

27  reputations in the EDM industry.  Sillerman and Finkel conspired to obscure the

28  financing details of the deals that Plaintiffs identified and initiated.  The delays also

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 11 -
COMPLAINT

1  caused Plaintiffs' interests in the venture to be diluted, because Sillerman was forced

2  to promise equity to third parties as a condition for obtaining the financing that

3  Sillerman claimed he could supply himself.  Upon information and belief, Sillerman

4  spent 2012 using Plaintiffs' plan to pitch to investors to obtain the financing that he

5  promised to provide.  Indeed, as recently as December 2012, Sillerman asked Paolo

6  to help arrange meetings with the very same investor who had courted Plaintiffs

7  prior to their deal with Sillerman, and whom they had spurned based on Sillerman's

8  promises and representations, in order to raise additional required financing for

9  SFX's acquisitions.  Notwithstanding all that had transpired, Paolo arranged the

10  meeting with this third-party financing source.  After all, he continued to believe,

11  based on assurances from Sillerman and Finkel, that the venture's success would be

12  Plaintiffs' success.

13      37.    Throughout 2012, Plaintiffs spent over $50,000 of their own money on

14  expenses in pursuit of the transactions undertaken by SFX and were never fully

15  reimbursed; they did not receive any cash compensation from Sillerman or the

16  venture as promised.  Yet, according to SFX's S-1 filing, Sillerman and Finkel

17  received over $15 million and $7 million in compensation, respectively, in 2012.

18  **D. Defendants Continue Their Pattern of Deception and Evasion, and Lie**

19  **About a Reverse Stock Split as They Prepare an IPO**

20      38.    Throughout 2012 and continuing into 2013, Plaintiffs repeatedly

21  inquired about receiving formal documents memorializing the agreements they had

22  made with Sillerman in January 2012.  Each time, Sillerman or one of his agents

23  would offer assurances that the paperwork was forthcoming, offer an excuse as to

24  why there was a delay, or avoid answering altogether.  Upon information and belief,

25  Sillerman proceeded with plans to develop a corporate structure and IPO that would

26  exclude Plaintiffs, despite his agreement with Plaintiffs to develop the corporation

27  under the terms of the joint venture.  Indeed, Defendants engaged in a continual

28  pattern of evasion, delay and deception to avoid putting the parties' agreements in

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 12 -

COMPLAINT

1 | writing or compensating them in any way, and to obstruct them from involvement in
2 | the development of the corporation.

3 |     39.    For example, on February 1, 2012, Paolo e-mailed Sillerman about the
4 | venture's progress toward memorializing Plaintiffs' agreements in writing.
5 | Specifically, Paolo asked Sillerman for a "simple separate agreement between you
6 | and I *on the founder[s'] shares we agreed on for myself and my management*
7 | *team*...." Sillerman ignored the question. Instead, Sillerman used Plaintiffs'
8 | relationship with Finkel to further obfuscate the situation by having Finkel act as an
9 | intermediary to falsely reassure Plaintiffs that their deal with Sillerman was intact.

10 |     40.    In addition, throughout the spring of 2012, Defendants' lawyer sent
11 | drafts of employment agreements that varied materially from the terms of the
12 | agreements that Sillerman and the Plaintiffs had reached in January 2012. These
13 | drafts provided for lower compensation than what was agreed to as well as other
14 | onerous provisions, such as those requiring that Plaintiffs undergo background
15 | checks before starting employment (even though they were already actively working
16 | for the venture) and sign broad releases as a condition to receiving compensation.
17 | These draft employment agreements also failed to mention Plaintiffs' promised
18 | founders' shares and ownership interests in the company. Defendants'
19 | rationalization for the omission was that the founders' shares were a distinct matter
20 | that needed to be papered separately. In fact, those shares were never papered and
21 | were never delivered.

22 |     41.    Growing frustrated with Defendants' evasion and deception, on May 6,
23 | 2012, Paolo sent an e-mail to Finkel stating, "Also at this point there is still nothing
24 | outlining the founders shares etc. at all and we are already 4 full months in and have
25 | done a tremendous amount of work and completely opened up the drawbridge here
26 | to the entire EDM scene. *I need to be treated as a founder a founding partner and*
27 | *the person that pulled this together and not a 2nd class citizen* ...I have put my life
28 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 13 -

COMPLAINT

1   into this and am not really being treated fairly." Once again, there was no response

2   from Sillerman or Finkel.

3       42.   Yet, weeks later, and out of the blue, Sillerman e-mailed Paolo about an

4   alleged reverse stock split: "We're ready to go! You should be receiving documents

5   reflecting your stock ownership as previously distributed. *We did a reverse split of*

6   *the stock, so there are substantially fewer shares outstanding. You will still own*

7   *the same percentage of SFX.*" This was the first of several occasions on which

8   Sillerman, Finkel and their agents falsely represented to Plaintiffs that there had

9   been a "reverse stock split" of SFX founders' shares. *In fact, there was no reverse*

10  *stock split.* Plaintiffs are informed and believe, and thereon allege, that Defendants'

11  lies concerning a reverse stock split were intended to fraudulently induce Plaintiffs

12  into signing written documents that would have dramatically diluted their ownership

13  stakes as co-founders of SFX and to induce Plaintiffs to keep working on

14  Defendants' behalf despite that dilution. In fact, if Plaintiffs had been told the

15  truth—that there was in fact no reverse stock split and that Defendants were

16  attempting to dramatically dilute Plaintiffs' ownership stakes for their own gain—

17  they would have immediately stopped working on Defendants' behalf, informed

18  others of Defendants' perfidy, and many or all of SFX's key acquisitions, including

19  the initial acquisitions, Disco Donnie Presents and Dayglow, would not have

20  happened.

21      43.   Plaintiffs later learned that this was not the first time Defendants had

22  connived to dilute Plaintiffs' ownership stakes. Indeed, unbeknownst to Plaintiffs,

23  Defendants had schemed to dilute Plaintiffs' shares in February 2012 by authorizing

24  36 million founders' shares. This dilution would leave Plaintiffs with only a 6.9%

25  ownership interest in SFX, a significant reduction from what was agreed between

26  them when they formed the joint venture. Rather than develop a corporation

27  *together with* Plaintiffs, as agreed to under the joint venture agreement, Sillerman

28  moved forward with his own plans for the IPO of SFX, taking Plaintiffs' ownership

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 14 -

COMPLAINT

1  shares for himself and continually evading Plaintiffs' requests to honor their

2  agreement.

3       44.    Defendants persist in this fraudulent scheme. As recently as April 12,

4  2013, SFX's counsel, on behalf of Sillerman, Finkel, and SFX, sent an e-mail to

5  Gabriel stating, "As we are in the process of finishing up the revisions to the

6  registration statement, *we need to sign up the commitments made to you long ago.*

7  Attached is your consulting agreement and nominee agreements relating to your

8  founders' shares." Similar e-mails were sent to Paolo and Vavra. Attached to these

9  e-mails, and a series of others, were agreements outlining deals that offered

10  Plaintiffs only a fraction of the ownership interests that were agreed upon in January

11  2012 with the reduced number of shares falsely premised on the so-called "reverse

12  stock split" that never happened.

13                 **FIRST CLAIM FOR RELIEF**

14      **BREACH OF JOINT VENTURE/PARTNERSHIP AGREEMENT**

15    **(Against Defendants SFX Entertainment, Inc. and Robert F.X. Sillerman)**

16       45.    Plaintiffs incorporate by reference the allegations in paragraphs 1

17  through 44 above as set forth fully herein.

18       46.    As described herein, in January of 2012, Plaintiffs and Sillerman

19  entered into a valid partly oral, partly written joint venture/partnership agreement to

20  form a company focused on identifying, acquiring, consolidating, and operating

21  assets in the EDM industry. That company is now known as SFX.

22       47.    As part of that agreement, Plaintiffs were granted an ownership interest

23  in SFX and the right to manage and conduct the joint venture/partnership's business.

24  Plaintiffs were also to receive additional compensation, bonuses, and other lucrative

25  incentives, as was Sillerman. Through their respective ownership interests,

26  Plaintiffs and Sillerman would share in the profits and losses of the

27  venture/partnership.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 15 -

COMPLAINT

1    48.    At all times, Plaintiffs performed all conditions, covenants, and

2    promises required to be performed on their part in accordance with the terms of the

3    joint venture/partnership agreement to the extent their performance thereof has not

4    been excused.

5    49.    Defendants breached this joint venture/partnership agreement by,

6    among other things, repudiating the existence of the joint venture/partnership,

7    depriving Plaintiffs of their ownership shares in the joint venture/partnership and the

8    past, present, and future proceeds therefrom, failing to include Plaintiffs in the

9    conversion of the joint venture/partnership to a corporation, and obstructing

10   Plaintiffs' right to manage and conduct the joint venture/partnership's business.

11   50.    As a direct and proximate cause of Defendants' breaches of the above-

12   described agreement with Plaintiffs, Plaintiffs have each been damaged in amounts

13   not presently ascertainable in full and to be proven at trial.  The amount of damages

14   is in excess of the jurisdictional limits of this Court.

15                         **SECOND CLAIM FOR RELIEF**

16   **BREACH OF IMPLIED JOINT VENTURE/PARTNERSHIP AGREEMENT**

17     **(Against Defendants SFX Entertainment, Inc. and Robert F.X. Sillerman)**

18   51.    Plaintiffs incorporate by reference the allegations in paragraphs 1

19   through 50 above as set forth fully herein, but plead this claim in the alternative to

20   the First Claim for Relief.

21   52.    Plaintiffs entered into an implied-in-fact joint venture/partnership

22   agreement with Sillerman, as shown by their course of conduct, to form a company

23   focused on identifying, acquiring, consolidating, and operating assets in the EDM

24   industry, and to share in the profits and losses therefrom.

25   53.    By working together with Plaintiffs to develop a successful EDM

26   company and requesting that Plaintiffs negotiate and close key acquisitions on the

27   venture's behalf, Sillerman manifested the intent to form and operate a joint

28   venture/partnership with Plaintiffs.  Sillerman was aware that Plaintiffs performed

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 16 -

COMPLAINT

1  these and other acts in furtherance of the joint venture/partnership in expectation of

2  joint ownership, control, and profits.

3       54.    Plaintiffs have performed all conditions, covenants, and promises

4  required to be performed by them in accordance with the terms and conditions of

5  their agreement with Sillerman to the extent their performance thereof has not been

6  excused.

7       55.    Defendants breached this joint venture/partnership agreement by,

8  among other things, repudiating the existence of the joint venture/partnership,

9  depriving Plaintiffs of their ownership shares in the joint venture/partnership and the

10  past, present, and future proceeds therefrom, failing to include Plaintiffs in the

11  conversion of the partnership to a corporation, and obstructing Plaintiffs' right to

12  manage and conduct the joint venture/partnership's business.

13      56.    As a direct and proximate cause of Defendants' breaches of the above-

14  described agreement with Plaintiffs, Plaintiffs have each been damaged in amounts

15  not presently ascertainable in full and to be proven at trial.  The amount of damages

16  is in excess of the jurisdictional limits of this Court.

17                        **THIRD CLAIM FOR RELIEF**

18                **BREACH OF FIDUCIARY DUTY OWED TO JOINT**

19                          **VENTURERS/PARTNERS**

20                   **(Against Defendant Robert F.X. Sillerman)**

21      57.    Plaintiffs incorporate by reference the allegations in paragraphs 1

22  through 56 above as set forth fully herein.

23      58.    As described herein, in January of 2012, Plaintiffs and Sillerman

24  entered into a joint venture/partnership to create the company that is now SFX.

25  Plaintiffs and Sillerman agreed that they would be joint venturers/partners and co-

26  founders of SFX.

27      59.    As a joint venturer/partner of the joint venture/partnership, Sillerman at

28  all times owed Plaintiffs the fiduciary duties of loyalty, care, disclosure, and good

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 17 -

COMPLAINT

1 faith and fair dealing.  Pursuant to such fiduciary duties, Sillerman was required to

2 act with the utmost good faith towards Plaintiffs and to avoid acts and omissions

3 adverse to Plaintiffs.

4       60.     Sillerman breached his fiduciary duties to Plaintiffs, including the

5 duties of loyalty, care, disclosure, and good faith and fair dealing, by engaging in the

6 acts and omissions alleged herein.  Such acts and omissions include, but are not

7 limited to, unilaterally redistributing the ownership stakes in SFX to benefit himself,

8 fraudulently attempting to reduce Plaintiffs' ownership stakes by covertly

9 authorizing 36 million founders' shares and lying about a "reverse stock split,"

10 forcing Plaintiffs out of the business after misappropriating their ideas and reaping

11 the benefits of their work and connections, failing to provide Plaintiffs with the

12 ownership stakes and founders' shares to which they are entitled, failing to include

13 Plaintiffs in the conversion of the joint venture/partnership to a corporation,

14 obstructing Plaintiffs' right to manage and conduct the joint venture/partnership's

15 business, and by improperly withholding Plaintiffs' salaries, options and bonuses.

16       61.     As a direct and proximate result of these breaches of Sillerman's

17 fiduciary duties, Plaintiffs have and will sustain damages in an amount to be proven

18 at trial that exceeds the jurisdictional limit of this Court.

19       62.     By engaging in the conduct described herein, Sillerman has wrongfully

20 diverted the ownership shares, personal property, and assets of the joint

21 venture/partnership to which Plaintiffs are rightfully entitled.  Plaintiffs respectfully

22 request that such property be held by Sillerman in constructive trust for Plaintiffs.

23       63.     Plaintiffs are informed and believe that the acts and omissions of

24 Sillerman described herein were done willfully, maliciously, oppressively, and

25 fraudulently, and Plaintiffs are therefore entitled to punitive and exemplary damages

26 in an amount to be obtained according to proof, which is appropriate to punish or set

27 an example of Sillerman.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 18 -

COMPLAINT

## FOURTH CLAIM FOR RELIEF

### CONSTRUCTIVE FRAUD

#### (Against Defendant Robert F.X. Sillerman)

64.   Plaintiffs incorporate by reference the allegations in paragraphs 1 through 63 above as set forth fully herein.

65.   As described herein, because Sillerman and Plaintiffs created a joint venture/partnership, a fiduciary relationship existed between Sillerman and Plaintiffs.

66.   Sillerman breached his fiduciary duties to Plaintiffs by engaging in the acts and omissions alleged above.  Among other things, Sillerman (1) fraudulently misrepresented that Plaintiffs' promised "founders' shares" were forthcoming to induce Plaintiffs to keep working on behalf of SFX when Sillerman never had any intention of issuing such shares to Plaintiffs; (2) fraudulently misrepresented to Plaintiffs that SFX did a "reverse split of the stock" when no such reverse stock split occurred in an attempt to get Plaintiffs to sign agreements that would substantially reduce their ownership stakes in SFX; (3) fraudulently misrepresented that he would and could readily finance the joint venture/partnership, but instead used Plaintiffs' pitch deck to raise money in the capital markets for SFX's acquisitions, unbeknownst to Plaintiffs and with the effect of diluting Plaintiffs' interests in SFX, in order to secure such financing; and (4) fraudulently misrepresented that Plaintiffs would manage and conduct SFX's business and induced them to perform work on SFX's behalf without compensation for their efforts, all while freezing them out and bringing others in to manage the company.

67.   Plaintiffs reasonably and justifiably relied on Sillerman's assertions and omissions about the joint venture/partnership and their ownership stake and role in SFX.  Plaintiffs believed that they were partners with Sillerman and that they would control and own SFX.  Plaintiffs turned down other real, lucrative opportunities,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 19 -

COMPLAINT

1 | entered into the joint venture/partnership agreement with Sillerman, and worked

2 | tirelessly to launch SFX in reliance on Sillerman's false statements and omissions.

3 |     68.    As a direct and proximate result of Sillerman's false statements and

4 | omissions in breach of his fiduciary duties to Plaintiffs, Plaintiffs have and will

5 | sustain damages in an amount to be proven at trial that exceeds the jurisdictional

6 | limit of this Court.

7 |     69.    By engaging in the conduct described herein, Sillerman has wrongfully

8 | diverted the ownership shares, personal property, and assets of the joint

9 | venture/partnership to which Plaintiffs are rightfully entitled.  Plaintiffs respectfully

10 | request that such property be held by Sillerman in constructive trust for Plaintiffs.

11 |     70.    Plaintiffs are informed and believe that the acts and omissions of

12 | Sillerman described herein were done willfully, maliciously, oppressively, and

13 | fraudulently, and Plaintiffs are therefore entitled to punitive and exemplary damages

14 | in an amount to be obtained according to proof, which is appropriate to punish or set

15 | an example of Sillerman.

16 | **FIFTH CLAIM FOR RELIEF**

17 | **BREACH OF CONTRACT**

18 | **(Against Defendants SFX Entertainment, Inc. and Robert F.X. Sillerman)**

19 |     71.    Plaintiffs incorporate by reference the allegations in paragraphs 1

20 | through 70 above as set forth fully herein.

21 |     72.    In January 2012, Plaintiffs agreed to leverage their contacts and

22 | experience in the EDM industry to create an EDM empire in exchange for control

23 | and ownership of the newly formed company and additional compensation.

24 |     73.    In a valid written agreement, Plaintiffs were promised 2.5 million in

25 | founders' shares and each Plaintiff was granted a five-year compensation contract.

26 | Paolo was offered $300,000 in salary and 200,000 stock options per year; Vavra was

27 | offered $200,000 in salary and 200,000 stock options per year; and Gabe was

28 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 20 -

COMPLAINT

offered $100,000 in salary and 100,000 stock options per year.  Further, each Plaintiff was entitled to additional options and bonuses, as warranted.

74.    Paolo summarized these final terms in an e-mail to Sillerman dated January 8, 2012.  Sillerman responded, *"We have a deal."*

75.    Defendants have materially breached this contract by, among other things:

a.    Failing to issue the founders' shares to Plaintiffs as set forth in their agreement;

b.    Failing to pay salaries to Plaintiffs as set forth in their agreement;

c.    Failing to issue stock options to Plaintiffs as set forth in their agreement;

d.    Failing to pay additional options and bonuses, in stock or cash, as set forth in their agreement;

e.    Excluding Plaintiffs from the management and control of the company; and

f.    Telling Paolo that a "reverse stock split" had occurred, and thereby attempting to dramatically lower Plaintiffs' founders' shares, when this was not true.

76.    Plaintiffs have performed all conditions, covenants, and promises required to be performed by them in accordance with the terms and conditions of their agreement with Defendants to the extent their performance thereof has not been excused.

77.    Defendants, to this day, continue to refuse to fulfill their obligations pursuant to the agreement.

78.    As a direct and proximate cause of Defendants' breaches of the above-described agreement with Plaintiffs, Plaintiffs have each been damaged in amounts not presently ascertainable in full and to be proven at trial.  The amount of damages exceeds the jurisdictional limit of this Court.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 21 -

COMPLAINT

# SIXTH CLAIM FOR RELIEF

## BREACH OF IMPLIED CONTRACT

### (Against Defendants SFX Entertainment, Inc. and Robert F.X. Sillerman)

79.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 78 above as set forth fully herein, but pleads this claim in the alternative to the Fifth Claim for Relief.

80.    Plaintiffs entered into an implied-in-fact contract with Sillerman, as shown by their course of conduct and the January 2012 e-mail correspondence between Paolo and Sillerman, to develop and work for a company focused on identifying, acquiring, consolidating, and operating assets in the EDM industry.

81.    By requesting that Plaintiffs negotiate and close key acquisitions on behalf of the company and by promising that Plaintiffs would receive ownership shares in the company and other compensation in exchange for such acts, Sillerman manifested the intent to enter into a contract with Plaintiffs consistent with the terms described in the January 2012 e-mail correspondence between Paolo and Sillerman. As evidenced by the January 2012 e-mail correspondence and subsequent communications between the parties described above, Sillerman was aware that Plaintiffs performed these acts in expectation of joint ownership, control, and other compensation.  Among other things, the January 2012 e-mail correspondence reflected that Sillerman and Plaintiffs mutually understood and intended that Plaintiffs would receive 2.5 million founders' shares and five-year employment contracts.  Moreover, Paolo was offered $300,000 in salary and 200,000 stock options per year; Vavra was offered $200,000 in salary and 200,000 stock options per year; and Gabe was offered $100,000 in salary and 100,000 stock options per year.  Further each Plaintiff was entitled to additional options and bonuses, as warranted.

82.    Plaintiffs have performed all conditions, covenants, and promises required to be performed by them in accordance with the terms and conditions of

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

1  their agreement with Defendants to the extent their performance thereof has not
2  been excused.

3        83.    Defendants materially breached this contract by, among other things,
4  depriving Plaintiffs of their founders' shares, salaries, stock options, bonuses, and
5  the right to manage and jointly control SFX.

6        84.    As a direct and proximate cause of Defendants' breaches of the above-
7  described agreement with Plaintiffs, Plaintiffs have each been damaged in amounts
8  not presently ascertainable in full and to be proven at trial. The amount of damages
9  exceeds the jurisdictional limit of this Court.

10                        **SEVENTH CLAIM FOR RELIEF**
11                          **PROMISSORY ESTOPPEL**
12  **(Against Defendants SFX Entertainment, Inc. and Robert F.X. Sillerman)**

13        85.    Plaintiffs incorporate by reference the allegations in paragraphs 1
14  through 84 above as set forth fully herein.

15        86.    On January 8, 2012, Paolo committed on behalf of Plaintiffs to partner
16  with Sillerman in their new joint venture/partnership and summarized the terms of
17  their agreement in an e-mail, to which Sillerman responded, "We have a deal." This
18  was a clear and unambiguous promise to abide by the terms set forth in the e-mail
19  correspondence between Paolo and Sillerman between January 6, 2012 and January
20  8, 2012, including the exchange of founders' shares, salaries, stock options, and
21  additional compensation in exchange for Plaintiffs' work to develop a company
22  focused on identifying, acquiring, consolidating, and operating assets in the EDM
23  industry.

24        87.    In reasonable reliance upon Sillerman's promise that Plaintiffs and
25  Sillerman had a "deal" on the terms set forth in the e-mail correspondence, Plaintiffs
26  began working immediately, full-time, for SFX as described herein. Plaintiffs also
27  turned down other lucrative offers in reasonable reliance on Sillerman's promise.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 23 -

COMPLAINT

1    88.    Plaintiffs' reliance on Sillerman's promise that they had a "deal" on the

2    terms clearly set forth in the e-mail correspondence was entirely foreseeable by

3    Sillerman, who immediately began sending them proposed terms for the first

4    acquisition he wanted them to facilitate on SFX's behalf.  Indeed, Sillerman and his

5    agents strung along Plaintiffs for over a year, while purposely inducing them to

6    continue negotiating and closing key acquisitions on SFX's behalf.

7    89.    Defendants breached their promises to Plaintiffs by, among other

8    things, failing to compensate Plaintiffs for the reasonable value of their services.

9    90.    Plaintiffs were injured by their reasonable reliance on Defendants'

10    broken promises in an amount to be proven at trial that exceeds the jurisdictional

11    limit of this Court.

12    **EIGHTH CLAIM FOR RELIEF**

13    **FRAUDULENT INDUCEMENT**

14    **(Against Defendants SFX Entertainment, Inc. and Robert F.X. Sillerman)**

15    91.    Plaintiffs incorporate by reference the allegations in paragraphs 1

16    through 90 above as set forth fully herein.

17    92.    In January 2012, Sillerman induced Plaintiffs to enter into the joint

18    venture/partnership agreement by making material misrepresentations to, and

19    concealing or suppressing material facts from Plaintiffs.  In particular, Sillerman,

20    with the intent to induce Plaintiffs to rely on such misrepresentations and enter into

21    a joint venture/partnership agreement with him, perform work on SFX's behalf, and

22    forego other valuable business opportunities, fraudulently misrepresented to

23    Plaintiffs that: (1) he would "partner" with Plaintiffs in creating SFX, sharing

24    ownership and control of the company with them; (2) Plaintiffs would receive 2.5

25    million "founders' shares," five-year employment contracts, and salaries, stock

26    options, and bonuses as described herein; (3) he would personally finance the joint

27    venture/partnership or had sufficient access to funds to finance the planned

28    acquisitions, when in reality he did not have access to such necessary funds at the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 24 -

COMPLAINT

1   time and needed and intended to seek to raise the funds from outside investors; and

2   (4) Plaintiffs would manage and conduct SFX's business. Sillerman made these

3   representations in a meeting with Paolo and others on January 5, 2012, in e-mail

4   correspondence with Paolo on January 6, 2012 through January 8, 2012, and in a

5   meeting with Paolo, Vavra, and others on January 9, 2012.

6       93.   On information and belief, Sillerman knew that his representations and

7   assertions of fact were material and were false and misleading at the time they were

8   made, or, at a minimum, acted with reckless disregard for the truth or falsity of the

9   representations and omissions.

10      94.   On information and belief, Sillerman misrepresented, concealed, or

11  suppressed these facts with the intent to influence the Plaintiffs to enter into the joint

12  venture/partnership agreement and compensation agreements and to forego other

13  business opportunities.

14      95.   Plaintiffs reasonably and justifiably relied on Sillerman's

15  misrepresentations and entered into the joint venture/partnership agreement with

16  Sillerman based on their belief that Sillerman would finance the joint

17  venture/partnership and based on Sillerman's false assurances.

18      96.   At the time Plaintiffs acted, Plaintiffs were unaware of the concealed or

19  suppressed facts and would have acted differently if Plaintiffs had known the true

20  facts.

21      97.   Moreover, after Plaintiffs agreed to enter in the joint

22  venture/partnership agreement with Sillerman and started working on SFX's behalf,

23  Sillerman made additional fraudulent misrepresentations to Plaintiffs to further

24  induce their reliance. For example, on May 31, 2012, after Plaintiffs had repeatedly

25  requested formal paperwork memorializing their founders' shares agreements,

26  Sillerman fraudulently misrepresented to Paolo that SFX did a "reverse split of the

27  stock" when no such reverse stock split had occurred. Sillerman falsely represented

28  that Plaintiffs would own the same percentage of the company despite the purported

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 25 -

COMPLAINT

1 reverse stock split.  In reality, this was an attempt by Sillerman to dramatically
2 reduce Plaintiffs' ownership stakes in the company while lulling Plaintiffs into a
3 false sense of security that Sillerman intended to honor his obligations.  Sillerman
4 made this misrepresentation in an effort to conceal his deceptive scheme to dilute
5 Plaintiffs' ownership stakes in SFX and thereby induce them to continue to working
6 on SFX's behalf.

7      98.   On information and belief, Sillerman knew that this representation of
8 fact was material and was false and misleading at the time it was made, or, at a
9 minimum, acted with reckless disregard for the truth or falsity of the representation.

10      99.   As alleged above, Plaintiffs reasonably and justifiably relied on
11 Sillerman's May 31, 2012 misrepresentation, were unaware of the concealed or
12 suppressed facts, and would have acted differently if Plaintiffs had known the true
13 facts.

14      100.   As a result of Plaintiffs' reliance upon Sillerman's misrepresentations,
15 Plaintiffs have suffered damages in an amount to be proven at trial that exceeds the
16 jurisdictional limit of this Court.

17      101.   By engaging in the conduct described herein, Sillerman has wrongfully
18 diverted the ownership shares, personal property, and assets of SFX to which
19 Plaintiffs are rightfully entitled.  Plaintiffs respectfully request that such property be
20 held by Sillerman in constructive trust for Plaintiffs.

21      102.   Plaintiffs are informed and believe that the acts and omissions of
22 Sillerman described herein were done willfully, maliciously, oppressively and
23 fraudulently, and Plaintiffs are therefore entitled to punitive and exemplary damages
24 in an amount to be obtained according to proof, which is appropriate to punish or set
25 an example of Sillerman.

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 26 -

COMPLAINT

# NINTH CLAIM FOR RELIEF

## PROMISSORY FRAUD

### (Against Defendants SFX Entertainment, Inc. and Robert F.X. Sillerman)

103.   Plaintiffs incorporate by reference the allegations in paragraphs 1 through 102 above as set forth fully herein.

104.   In January 2012, Sillerman made promises to Plaintiffs without any intention of performing them to induce Plaintiffs to enter into the joint venture/partnership agreement with Sillerman and forego other business opportunities.   In particular, Sillerman promised Plaintiffs that: (1) he would "partner" with Plaintiffs in creating SFX, sharing ownership and control of the company with them; (2) Plaintiffs would receive 2.5 million "founders' shares," five-year employment contracts, and salaries, stock options, and bonuses as described herein; (3) he would personally finance the joint venture/partnership or had sufficient, ready access to funds to finance the planned acquisitions, when in reality he did not have such access to necessary funds at the time and intended to seek to raise the funds from outside investors; and (4) Plaintiffs would manage and conduct SFX's business.  Sillerman made these representations in a meeting with Paolo and others on January 5, 2012, in e-mail correspondence with Paolo on January 6, 2012 through January 8, 2012, and in a meeting with Paolo, Vavra, and others on January 9, 2012.

105.   Sillerman never intended to perform these promises as evidenced by, among other things, Sillerman's actions immediately after the promises were made. For example, Sillerman immediately set out to create a corporate structure that would dramatically dilute Plaintiffs' ownership stakes in the company without consulting Plaintiffs, excluded Plaintiffs from key management decisions including discussions regarding the structure of the company, presented employment contracts containing terms materially different than those promised in the January 8, 2012 e-mail correspondence, attempted to raise money to finance the acquisitions using

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 27 -

COMPLAINT

1 Plaintiffs' pitch deck unbeknownst to Plaintiffs, refused to formally memorialize the

2 founders' shares agreements, and lied that a reverse stock split had taken place in an

3 effort to further dilute Plaintiffs' ownership stakes.

4      106.   Plaintiffs reasonably relied on these promises.  Plaintiffs believed that

5 Sillerman had the capital to finance the joint venture/partnership and would honor

6 his promises.  Sillerman encouraged Plaintiffs to immediately begin negotiating and

7 closing key acquisitions on SFX's behalf, and offered a series of excuses to conceal

8 or explain away his failure to honor his promises.  To induce Plaintiffs' continued

9 loyalty and hard work, Sillerman repeatedly assured Plaintiffs that their founders'

10 shares and other compensation were coming.

11      107.   In fact, Sillerman never performed the promises made to Plaintiffs.

12 Plaintiffs have not received any founders' shares or compensation for their work to

13 date.  Plaintiffs were frozen out of the management of the company without

14 explanation and replaced by Sillerman's own management team.  Sillerman also did

15 not have the financing in place to fund the acquisitions, as promised, and a number

16 of closings were delayed as a result, harming the reputation of Plaintiffs.

17      108.   Similarly, on May 31, 2012, Sillerman promised Paolo that Plaintiffs'

18 founders' shares were coming in an effort to lull Plaintiffs into a false sense of

19 security that Sillerman still intended to honor his original promises despite delays,

20 and to keep Plaintiffs working on SFX's behalf despite their growing frustration.  In

21 the May 31, 2012 e-mail, however, Sillerman fraudulently misrepresented that SFX

22 did a "reverse split of the stock" when no such reverse stock split had occurred.

23 Sillerman falsely promised that Plaintiffs would own the same percentage of the

24 company despite the purported reverse stock split.  In reality, this was an attempt by

25 Sillerman to dramatically reduce Plaintiffs' ownership stakes in the company.

26 Sillerman made this misrepresentation in an effort to conceal his deceptive scheme

27 to dilute Plaintiffs' ownership stakes in SFX and thereby induce them to continue to

28 working on SFX's behalf.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 28 -

COMPLAINT

109. Sillerman never intended to perform his promise to deliver to Plaintiffs the founders' shares they were entitled to. Rather, he acted in bad faith and lied about the reverse stock split in an effort to deceive Plaintiffs and dilute their interests without them knowing.

110. Plaintiffs reasonably and justifiably relied on Sillerman's lies and false promises, both when they agreed to enter into the joint venture/partnership in the first place and later when they continued working on SFX's behalf. Plaintiffs turned down other lucrative opportunities, agreed to specific deal terms that they would not otherwise have agreed to, and worked tirelessly—without pay—to launch SFX in reliance on Sillerman's lies and false promises.

111. As alleged above, at the time Plaintiffs acted, Plaintiffs were unaware of Sillerman's lies and his bad faith intent not to perform on the promises he made and would have acted differently if Plaintiffs had known the truth.

112. As a result of Plaintiffs' reliance upon Sillerman's false promises, Plaintiffs have suffered damages in an amount to be proven at trial that exceeds the jurisdictional limit of this Court.

113. By engaging in the conduct described herein, Sillerman has wrongfully diverted the ownership shares, personal property, and assets of SFX to which Plaintiffs are rightfully entitled. Plaintiffs respectfully request that such property be held by Sillerman in constructive trust for Plaintiffs.

114. Plaintiffs are informed and believe that the acts and omissions of Sillerman described herein were done willfully, maliciously, oppressively, and fraudulently, and Plaintiffs are therefore entitled to punitive and exemplary damages in an amount to be obtained according to proof, which is appropriate to punish or set an example of Sillerman.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 29 -

COMPLAINT

## TENTH CLAIM FOR RELIEF

## UNFAIR COMPETITION – VIOLATION OF

## BUS. & PROF. CODE §§ 17200 ET SEQ.

### (Against Defendants SFX Entertainment, Inc. and Robert F.X. Sillerman)

115.   Plaintiffs incorporate by reference the allegations in paragraphs 1 through 114 above as set forth fully herein.

116.   Defendants' conduct, as described herein, constitutes an unfair and unlawful business practice in violation of Sections 17200, *et seq*. of the California Business and Professions Code.

117.   Plaintiffs are entitled to restitution and preliminary and permanent injunctive relief preventing the continuance of Defendants' unfair and unlawful business practices described herein.

## ELEVENTH CLAIM FOR RELIEF

## QUANTUM MERUIT

### (Against Defendants SFX Entertainment, Inc. and Robert F.X. Sillerman)

118.   Plaintiffs incorporate by reference the allegations in paragraphs 1 through 117 above as set forth fully herein.

119.   Plaintiffs developed a strategy and business plan to build a company focused on identifying, acquiring, consolidating, and operating assets in the EDM industry.  Plaintiffs shared that confidential business plan with Sillerman and Finkel and spent substantial time and effort identifying, negotiating, and closing key acquisitions on SFX's behalf, thereby rendering significant services to Defendants.

120.   Those services were of a direct and substantial benefit to Defendants.

121.   Therefore, there is an agreement implied in law to pay Plaintiffs the reasonable value of their services.

122.   Plaintiffs should be granted restitution as a result of Defendants' unjust enrichment in an amount to be proven at trial.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 30 -

COMPLAINT

**TWELFTH CLAIM FOR RELIEF**

**BREACH OF FIDUCIARY DUTY OWED TO PRINCIPALS**

**(Against Defendant Sheldon Finkel)**

123.   Plaintiffs incorporate by reference the allegations in paragraphs 1 through 122 above as set forth fully herein.

124.   Plaintiffs introduced Finkel to the world of EDM and revealed their strategic business plan to utilize their unique network to consolidate the industry through strategic acquisitions.  Finkel believed in Plaintiffs' business plan and expressed interest in working with them to bring the plan to fruition.

125.   In or around December 2011, Plaintiffs and Finkel agreed that Finkel would engage with third parties on Plaintiffs' behalf to facilitate the funding of Plaintiffs' business plan.  Plaintiffs entrusted Finkel with confidential information about their business strategy and industry contacts to enable him to perform his duties as their agent.  Thereafter, Finkel acted as Plaintiffs' agent in his meetings with potential investors.

126.   As an agent, Finkel at all times owed Plaintiffs the fiduciary duties of loyalty, care, obedience, and good faith and fair dealing.  Pursuant to such fiduciary duties, Finkel was required to act with the utmost good faith towards Plaintiffs and to avoid acts and omissions adverse to Plaintiffs.

127.   Finkel breached his fiduciary duties, including the duties of loyalty, care, obedience, and good faith and fair dealing, to Plaintiffs by engaging in the acts and omissions alleged herein.  Such acts include, but are not limited to, utilizing Plaintiffs' confidential business plan for his own personal gain, engaging in self-dealing, and convincing Plaintiffs to forego other economically beneficial business relationships.

128.   As a direct and proximate result of Finkel's breaches, Plaintiffs have and will sustain damages in an amount to be proven at trial that exceeds the jurisdictional limit of this Court.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership including
Professional Corporations

2959145

1    129.   Plaintiffs are informed and believe that the wrongful acts of Finkel

2  described herein were done willfully, maliciously, oppressively, and fraudulently,

3  and Plaintiffs are therefore entitled to punitive and exemplary damages in an amount

4  to be obtained according to proof, which is appropriate to punish or set an example

5  of Finkel.

6                          **THIRTEENTH CLAIM FOR RELIEF**

7       **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

8                          **(Against Defendant Sheldon Finkel)**

9    130.   Plaintiffs incorporate by reference the allegations in paragraphs 1

10 through 129 above as set forth fully herein.

11    131.   Plaintiffs had an existing business relationship with a prominent

12 investor.  The investor expressed a strong interest in forming a partnership with

13 Plaintiffs to fund their business plan.  This relationship had a high probability of

14 future economic benefit for Plaintiffs.

15    132.   Finkel was at all times aware of Plaintiffs' business relationship with

16 the investor.

17    133.   Upon information and belief, Finkel knowingly and intentionally

18 interfered with Plaintiffs' business relationship with the prominent investor.  Finkel

19 had intimate knowledge of Plaintiffs' business plan.  On or around January 3, 2012,

20 Finkel met privately with Sillerman to discuss Plaintiffs' idea.  That week, Finkel

21 convinced Plaintiffs to meet with Sillerman.  In breach of his fiduciary duties

22 discussed herein, Finkel conspired with Sillerman to persuade Plaintiffs to abandon

23 their relationship with their prior investor by enticing them to enter into a joint

24 venture/partnership with Sillerman and to continue their relationship with Sillerman.

25    134.   After the meeting with Sillerman, the investor made a firm offer to

26 Plaintiffs to carry out the business plan.  Based on the promises made by Finkel and

27 Sillerman, Plaintiffs declined the offer.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

- 32 -

COMPLAINT

1   135.   As a direct and proximate result of Finkel's intentional interference

2   with Plaintiffs' prospective economic advantage, Plaintiffs have been damaged in an

3   amount to be proven at trial that exceeds the jurisdictional limit of this Court.

4   136.   Plaintiffs are informed and believe that the wrongful acts of Finkel

5   described herein were done willfully, maliciously, oppressively, and fraudulently,

6   and Plaintiffs are therefore entitled to punitive and exemplary damages in an amount

7   to be obtained according to proof, which is appropriate to punish or set an example

8   of Finkel.

9   ## PRAYER FOR RELIEF

10   WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of

11   them, as follows:

12   1.   For compensatory damages in excess of $75,000, the exact amount of

13   which has yet to be ascertained;

14   2.   For interest to the extent permitted by law;

15   3.   For an award of exemplary and punitive damages in amounts to be

16   proven at trial;

17   4.   For equitable relief, including but not limited to restitution and

18   imposition of a constructive trust upon Sillerman;

19   5.   For attorneys' fees and costs expended in the litigation of this action to

20   the full extent permitted by law; and

21   6.   For such other and further relief as this Court deems appropriate.

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

1  Dated: _2/4/2017_

2

3

4

5

6

7  By: _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2959145

IRELL & MANELLA LLP
John C. Hueston

Steven A. Marenberg
Alison L. Plessman
Steven N. Feldman
Susannah M. Rooney


     John C. Hueston
     Attorneys for Plaintiffs

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a

3   jury trial for all issues properly triable to a jury in this lawsuit.

4

5   Dated:   2/4/2014

6                                                IRELL & MANELLA LLP
                                                 John C. Hueston
7
                                                 Steven A. Marenberg
8                                                Alison L. Plessman
                                                 Steven N. Feldman
9                                                Susannah M. Rooney

10

11
                                        By: _____
12
                                                 John C. Hueston
13                                               Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Ronald S.W. Lew_____ and the assigned Magistrate Judge is _____Carla Woehrle_____ .

The case number on all documents filed with the Court should read as follows:

### 2:14-cv-00880 RSWL-CWx

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____February 5, 2014_____
Date

By  SBOURGEOIS _____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | [ ] Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| PAOLO MORENO, an individual; LAWRENCE VAVRA, an individual; and GABRIEL MORENO, an individual, | ) ) ) ) ) |
| *Plaintiff(s)* | ) ) ) Civil Action No. |
| v. | ) |
| SFX ENTERTAINMENT, INC., a Delaware corporation with offices in California; ROBERT F.X. SILLERMAN, an individual;  SHELDON FINKEL, an individual, | ) ) ) ) |
| *Defendant(s)* | ) |

CV14-0880 RSWL- CWx

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  John C. Hueston, Steven A. Marenberg, Alison L. Plessman,
Steven N. Feldman , Susannah M. Rooney
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:   FEB - 5 2014

*Signature of Clerk or Deputy Clerk*

1184

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)*
_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                           *Server's signature*

                                                           _____
                                                           *Printed name and title*


                                                           _____
                                                           *Server's address*

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| Paolo Moreno; Lawrence Vavra; Gabriel Moreno | SFX Entertainment, Inc.; Robert F.X. Sillerman; Sheldon Finkel |

| **(b) County of Residence of First Listed Plaintiff**   Los Angeles | **County of Residence of First Listed Defendant**   New York |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| **(c) Attorneys** (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. | **Attorneys** (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information. |
|---|---|
| John C. Hueston, Steven A. Marenberg, Alison L. Plessman, Steven N. Feldman, Susannah M. Rooney Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900 Los Angeles, CA 90067-4276 (310) 277-1010 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 2. U.S. Government Defendant
☐ 3. Federal Question (U.S. Government Not a Party)
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ Determined at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332: Diversity of Citizenship

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| **FOR OFFICE USE ONLY:**   Case Number: | CV14-0880 |
|---|---|

CV-71 (11/13)   CIVIL COVER SHEET   Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ | Los Angeles | Western |
| | ☐ | Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ | Orange | Southern |
| | ☐ | Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | **A PLAINTIFF?**<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | **A DEFENDANT?**<br><br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No | ☐ Los Angeles | ☐ Los Angeles | Western |
| If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western Division |

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in **this court** that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____   DATE: 2/4/2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |