1

2

3

4

5

6

7

8                  **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   PAOLO MORENO, LAWRENCE        )   No. CV-14-0880-RSWL-CWx
     VAVRA, and GABRIEL MORENO,    )
13                                 )
                                   )   **ORDER re: Defendants'**
14              Plaintiffs,        )   **Motion for Summary**
                                   )   **Judgment** [61]
15        v.                       )
                                   )
16                                 )
     SFX ENTERTAINMENT, INC.,      )
17   ROBERT F.X. SILLERMAN, and    )
     SHELDON FINKEL,               )
18                                 )
                                   )
19              Defendants.        )
     _____)

20

21        Currently before the Court is Defendants SFX

22   Entertainment, Inc. ("SFX") and Robert F.X. Sillerman's

23   ("Sillerman") (collectively, "Defendants")[1] Motion for

24   Summary Judgment [61] ("Motion"), in which Defendants

25   request summary judgment in their favor on all

26   _____
         [1] All claims asserted against Defendant Sheldon Finkel were
27   dismissed with leave to amend in the Court's August 1, 2014,
     Order [38] granting Defendants' Motion to Dismiss Plaintiffs'
28   twelfth and thirteenth claims.  Plaintiffs did not amend their
     Complaint.

                              1

1  remaining claims asserted against them by Plaintiffs
2  Paolo Moreno ("Paolo"), Gabriel Moreno ("Gabriel"), and
3  Lawrence Vavra ("Vavra") (collectively, "Plaintiffs").
4  Not. of Defs.' Mot. Summ. J. 2:1-10, ECF No. 61.

5      The Court, having reviewed all papers submitted and
6  pertaining to Defendants' Motion [61], **NOW FINDS AND**
7  **RULES AS FOLLOWS:** The Court **DENIES** Defendants' Motion
8  for Summary Judgment [61] in its entirety.

9                        **I. BACKGROUND**
10 **A.   Factual Background**
11     Plaintiffs Paolo Moreno, Gabriel Moreno, and
12 Lawrence Vavra are individuals and residents of Los
13 Angeles County, California.  Compl. ¶¶ 9-11, ECF No. 1.
14 Defendant SFX is a Delaware corporation with its
15 principal place of business in New York.  Id. ¶ 12;
16 Answer ¶ 12 (undisputed).  Defendant Sillerman is an
17 individual residing in New York and is Chairman and CEO
18 of SFX.  Id. ¶ 13; Answer ¶ 13 (undisputed).

19     In short, Plaintiffs allege that the parties
20 entered into a joint venture/partnership agreement
21 ("the agreement") to create, based on Plaintiffs'
22 business plan, a new EDM company that was to be
23 financed by Defendant Sillerman and that was to, and
24 now does, operate as SFX, which was, at the time of the
25 alleged agreement, a corporate shell that had been
26 incorporated by Sillerman.  Plaintiffs allege that,
27 after the agreement was made and after Plaintiffs
28 performed their obligations, which benefitted

1  Defendants, Defendants did not uphold their side of the
2  agreement in various ways, but, primarily, by refusing
3  to compensate Plaintiffs according to the terms of the
4  agreement.

5      Specifically, Plaintiffs allege that, in early
6  January 2012, after spending nearly two years creating
7  their business plan, Plaintiffs met with Defendant
8  Sillerman to present their business plan for a venture
9  that would "identify, acquire, consolidate, and operate
10 assets in the [EDM] industry."  Compl. ¶¶ 2, 9.
11 Plaintiffs allege that, in and after those meetings,
12 Plaintiffs and Defendant Sillerman "agreed to 'partner'
13 in the venture that is now known as SFX" such that
14 Plaintiffs would "use their contacts, skills, and
15 experience in EDM to consolidate the fragmented
16 industry through a series of acquisitions" and
17 Sillerman would "provide the financing for the
18 venture."  Id. (internal alterations and quotation
19 marks omitted).  Plaintiffs allege that Plaintiffs and
20 Sillerman "came to a firm deal" on January 8, 2012,
21 that promised Plaintiffs millions of founders' shares
22 in the business, along with options and other cash
23 compensation.  Id. ¶ 3.  Plaintiffs allege that
24 "Sillerman unambiguously confirmed this in e-mails,
25 stating[,] 'We have a deal.'"  Id.

26     Plaintiffs allege that they "performed their part
27 in the venture," by using their "EDM connections,"
28 "knowledge" of the EDM industry, and "acumen" to

acquire targeted assets that resulted in "much of the [$1 billion] value of [SFX]." Id. ¶¶ 1, 4. Plaintiffs state that, until "they were forced out by Sillerman . . ., Plaintiffs worked full-time on the venture's behalf to close its most important and lucrative acquisitions." Id. ¶ 4. Plaintiffs allege that "of the eight 'principal assets' identified by SFX's S-1 SEC filing . . ., seven were acquired in deals identified and facilitated by Plaintiffs." Id. Plaintiffs further assert that, even aside from the acquisitions, Plaintiffs benefitted Defendants by creating the "conceptual development" of the business idea that SFX became. Id. ¶¶ 2, 4.

Plaintiffs allege that Defendants engaged "in a deliberate and deceptive scheme to deprive Plaintiffs of their rightful ownership stake in, and control of, the venture that they created and built" by, among other actions, deceiving Plaintiffs about their ownership interests in SFX, reassuring Plaintiffs while they worked that they would receive what was promised, and, ultimately, failing to compensate Plaintiffs according to the terms of the agreement. Id. ¶¶ 5, 40. Plaintiffs allege that Defendant Sillerman ultimately "[took] Plaintiffs' ownership shares for himself and continually evad[ed] Plaintiffs' requests to honor their agreement." Id. ¶ 43.

On the basis of the above and additional factual allegations, Plaintiffs allege the following eleven

4

remaining claims:

1.  Breach of Joint Venture/Partnership Agreement

2.  Breach of Implied Joint Venture/Partnership
    Agreement

3.  Breach of Fiduciary Duty Owed to Joint
    Venturers/Partners

4.  Constructive Fraud

5.  Breach of Contract

6.  Breach of Implied Contract

7.  Promissory Estoppel

8.  Fraudulent Inducement

9.  Promissory Fraud

10. Unfair Competition - Violation of Cal. Bus. & Prof.
    Code §§ 17200 et seq.

11. Quantum Meruit

**B.   Procedural Background**

   Plaintiffs filed this Action [1] on February 5,
2014.   On April 7, 2015, Defendants filed the present
Motion for Summary Judgment [61].   The Opposition [81]
and Reply [90] were timely filed.   The hearing on the
Motion was set for May 26, 2015, and the Motion was
taken under submission [93] on May 21, 2015.

**II. LEGAL STANDARD**

   A "court shall grant summary judgment" when the
movant "shows that there is no genuine dispute as to
any material fact and the movant is entitled to
judgment as a matter of law."   Fed. R. Civ. P. 56(a).
The party moving for summary judgment has the initial

burden of proof to show no genuine dispute as to any material fact.  <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000); <u>see</u> Fed. R. Civ. P. 56(a).  The burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact.  <u>Fritz</u>, 210 F.3d at 1102-03; <u>see</u> Fed. R. Civ. P. 56(a).  When a defendant moves for summary judgment, summary judgment "is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 805-06 (1999).

### III. DISCUSSION

**A.   Evidentiary Objections**

Defendants make several evidentiary objections [92] to Plaintiffs' Statement of Genuine Disputes [81-1]. Upon review of the objected-to evidence and Defendants' bases for their objections, Defendants' evidentiary objections are **OVERRULED** either because the objections are without merit or because the Court need not rely on the objected-to evidence.

**B.   Motion for Summary Judgment**

Defendants request summary judgment in their favor as to all eleven claims asserted against them.

1.   <u>Breach of Express or Implied Joint Venture/ Partnership Agreement Claims</u>

Plaintiffs' first and second claims assert breach

of joint venture/partnership agreement and breach of implied joint venture/partnership agreement.

"A joint venture exists when there is an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses,[2] and a right of joint control."  Farhang v. Indian Inst. of Tech., Kharagpur, No. C-08-02658 RMW, 2010 WL 2228936, at *9 (N.D. Cal. Oct. 24, 2013) (internal quotation marks omitted) (quoting Connor v. Great W. Sav. & Loan Ass'n, 447 P.2d 609 (Cal. 1968)).  "A joint venture requires little formality in its creation, and the agreement is not invalid because it may be indefinite with respect to details."  Gross v. Raeburn, 33 Cal. Rptr. 432, 437 (Ct. App. 1963).

A joint venture agreement may also be implied by reasonable deduction based on the parties' "'acts and declarations.'"  Farhang, 2010 WL 2228936, at *10 (quoting Holtz v. United Plumbing & Heating Co., 319 P.2d 617 (Cal. 1957)).  "[W]hen parties have 'manifested their mutual intent to take [an] idea and make it concrete by forming a company and engaging in the business together . . . [this agreement combined with] the subsequent acts of the parties as they worked

---

[2] "[I]n the absence of an agreement to the contrary, losses are shared in the same proportion as profits."  Farhang, 2010 WL 2228936, at *10.

out the details provide [] sufficient certainty to
determine the existence of a breach and a remedy.'"[3]
<u>Id.</u>

Though Defendants assert that Plaintiffs have "no
evidence" showing the formation of an express or
implied joint venture or partnership agreement,
Plaintiffs in fact provide ample admissible evidence
creating a genuine dispute of material fact as to
Plaintiffs' first and second claims.  <u>See</u> Fed. R. Civ.
P. 56(a).

Plaintiffs allege that a joint venture/partnership
agreement was formed on January 8, 2012, via email
exchanges between Defendant Sillerman and Plaintiff
Paolo and that the parties' statements and actions
thereafter confirmed the existence of the express
agreement and/or established the existence of an
implied agreement.  Key facts are statements made by
the parties in emails from January 6, 2012, through
January 8, 2012, as well as subsequent statements and
actions of the parties.  <u>See</u> Sillerman Decl., Exs. RS3-
RS7, ECF No. 70; <u>see also</u> Hueston Decl., Ex. JH1, ECF
No. 82; Paolo Moreno Decl. ("Paolo Decl."), ECF No. 83.

The first email that could relate to a potential
joint venture or partnership is an email from Plaintiff

---

[3] "For a contract to be enforceable, its terms must be
reasonably certain, meaning the parties' obligations under the
contract must be sufficiently clear such that one can determine
whether there has been a breach." <u>Id.</u> (citing <u>Bustamonte v.
Intuit, Inc.</u>, 141 Cal. App. 4th 199, 209, 45 Cal. Rptr. 3d 692
(2006)).

1  Paolo to Defendant Sillerman on January 6, 2012, in
2  which Paolo refers to a meeting between Paolo and
3  Sillerman on January 5, 2012, and implies that Paolo
4  and Sillerman discussed the creation of a new company
5  at that meeting.  Sillerman Decl., Ex. RS4 at 026
6  (email from Paolo to Sillerman, Jan. 6, 2012, 4:18
7  p.m.).  Paolo provides Sillerman with what Paolo calls
8  "confidential information" about activity surrounding
9  important EDM acquisition targets, including the
10 activity of Paolo's team with regard to those targets,
11 and states that the confidential information is being
12 shared with Sillerman "for our new company."  Id. at
13 026-027.  Paolo states, "I would like to sort out our
14 deal as soon as possible[] [s]o we can go and conquer
15 the space immediately . . . ."  Id. at 027.  Paolo
16 explains that "Electric Daisy Carnival is a deal I
17 would like for *us* to cut next week."  Id. (emphasis
18 added).  Paolo signs his name and, underneath his name,
19 writes "Future (CEO / SFX Entertainment)."  Id.
20      Sillerman's response does not refute any of Paolo's
21 statements about the creation of a new company with
22 Sillerman.  Id. at 026 (email from Sillerman to Paolo
23 on January 6, 2012, at 5:08 p.m.).  Sillerman's
24 response states, "We must be fated to be together," and
25 proposes specific terms[4] for what Sillerman calls "our
26
27      [4] Defendant Sillerman proposes that Paolo "receive 1MM
   shares of SFX stock," "200K options a year for 5 years as part of
28 your 5 year employment agreement," "[s]alary of $300K, plus a
   bonus," and "[u]sual perks appropriate to your position."

1   deal." <u>Id.</u>  Sillerman concludes: "Let's get it done

2   and have at it.  We're ready to go."  <u>Id.</u>

3       In response, Paolo asks about and negotiates the

4   proposed terms and requests "a deal" for Plaintiffs

5   Gabriel and Vavra. <u>Id.</u> at 025 (email from Paolo to

6   Sillerman, Jan. 6, 2012, at 6:27 p.m.).

7       Additional negotiations occur,[5] and at 9:08 p.m. on

8   January 6, 2012, Paolo sends Sillerman an email that

9   proposes terms for Plaintiffs Gabriel and Vavra. <u>Id.</u>

10  Paolo says his "team will all be walking away from

11  there [sic] current situations and coming on board 24/7

12  to build this empire and all believe in the stock value

13  at the end of the day." <u>Id.</u>  Paolo notes, "we can

14  figure out offices overhead staff etc later on."[6]  <u>Id.</u>

15  at 025.

16      In response, on January 7, 2012, Sillerman writes

17  two sentences to Paolo: "We're fine on these deals.

18  Let's go." <u>Id.</u> at 024 (email from Sillerman to Paolo,

19

20  Sillerman Decl., Ex. RS4, at 026 (email from Sillerman to Paolo

21  on January 6, 2012, at 5:08 p.m.).

22      [5] <u>See</u> <u>id.</u> at 025 (email from Sillerman to Paolo on Jan. 6,
    2012 at 9:48 p.m.) (Sillerman states that he needs Paolo's input

23  "on deals for your associates," and states that he is "standing
    by" for those details); <u>id.</u> (Sillerman rejects Paolo's $500,000

24  salary request and states, "Cash compensation is not how you'll
    grow rich. $300K, plus bonus, is a good starting point. You do

25  close to what you say you can and you'll never mention comp to me
    again.  You'll make more than you can imagine.").

26

27      [6] Such evidence, among other statements by the parties,
    genuinely disputes Defendants' argument that Plaintiffs were

28  intended only to be mere employees of SFX, and not joint
    venturers or partners.  <u>See</u> Mot. 4:21-25.

1   Jan. 7, 2012, at 12:12 a.m.).

2       Plaintiff Paolo responds that he "presented the

3   deals below to the team" and that, though the salaries

4   are "pay cuts" for his team, the team is "okay on the

5   salaries" because they "believe in you, they believe in

6   me." Id. at 023 (email from Paolo to Sillerman on Jan.

7   7, 2012, at 10:52 a.m.). Paolo requests additional

8   founders shares Plaintiffs Gabriel and Vavra and asks

9   questions regarding bonuses and ownership interests.

10  Id. Paolo states that he "want[s] to close this today"

11  because his team is "ready to get busy" and Paolo

12  "want[s] to walk in the rooms next week, and start

13  making offers on our companies['] behalf." Id.

14      Defendant Sillerman responds to Paolo's questions

15  and requests and concludes that they should "not wait

16  until the end of the week to begin papering this," as

17  they should "keep the momentum going." Id. at 022-23

18  (email from Sillerman to Paolo on Jan. 7, 2012, at

19  11:12 a.m.). In response, Paolo writes, "MY TEAM AND I

20  ARE FULLY IN%100." Id. at 022 (email from Paolo to

21  Sillerman on Jan. 7, 2012, at 4:49 p.m.). Paolo

22  states: "Let's put the lawyers in contact now to paper

23  this up. We are officially partners, I have two

24  changes." Id. Plaintiff proposes his "last

25  negotiation" regarding founders shares so that they can

26  "close this deal." Id. Paolo urges Sillerman to "move

27  forward [to] close this deal" to become "partners" and

28  states that "[b]y partner I mean across the board our

11

interest will NEVER be mis-aligned."  Id.

In response, on January 7, 2012, at 8:49 p.m., Sillerman writes to Paolo: "Deal.  The additional shares will come from me.  Send me a quick summary to make sure we're on the same page. ...  Once I receive and confirm the recap the lawyers will be on it."  Id. (email from Sillerman to Paolo, Jan. 7, 2012, at 8:40 p.m.).  Paolo responds, "Will do."  Id. at 021 (email from Paolo to Sillerman, Jan. 7, 2012, at 6:27 p.m.).

On January 8, 2012, at 10:47 a.m., Paolo emails Sillerman the following terms:

1. "5 year employment agreements" for all.
2.   For Paolo Moreno:
     a. "300K base+ bonuses"
     b. "1.5mm founder shares"
     c. "200k options a year"
     d. "additional options and bonuses, payable in stock or cash, as warranted"
3.   For Lawrence Vavra:
     a. "200K base+ bonuses"
     b. "500k founder shares"
     c. "200k options a year"
     d. "additional options and bonuses, payable in stock or cash, as warranted"
4.   For Gabriel Moreno:
     a. "100K base+ bonuses"
     b. "500k founder shares"
     c. "100k options a year"

1        d. "additional options and bonuses, payable in

2        stock or cash, as warranted"

3    5. For "Associate C," which is "Donnie" (James "Disco

4        Donnie" Estopinal),[7] Paolo states, "we have to

5        discuss."

6    Id. at 021 (email from Paolo to Sillerman, Jan. 8,

7    2012, at 10:47 a.m.).

8        On January 8, 2012, at 11:06 a.m., Defendant

9    Sillerman responds: "We have a deal."   Id. at 020

10   (email from Sillerman to Paolo, Jan. 8, 2012, at 11:06

11   a.m.).   The only other statement Sillerman makes in the

12   email is: "Ask anyone who has been part of any of our

13   companies, like Mitch, and they will tell you that they

14   made more money from the optional payments than from

15   the mandatory payments.   Let's get the lawyers

16   working."   Id.

17       The above email discourse is sufficient to create a

18   genuine dispute of material fact[8] as to whether an

---

22   [7] See Opp'n 3:22.

23   [8] Though Defendants argue that the parties reserved final
24   agreement until formal documents were signed, see Mot. 5:15-18,
     the Court does not find any indisputable statements that
25   expressly reserve final agreement until formal documents are
     signed.   See Smissaert v. Chiodo, 330 P.2d 98, 100 (Cal Ct. App.
26   1958) (noting that there must be a "manifest intention that the
     formal agreement is not to be complete until reduced to a formal
27   writing"); Ablett v. Clauson, 272 P.2d 753, 756 (Cal. 1954) (in
     bank) (requiring "an essential element" to be "reserved for the
28   future agreement of both parties" for a "contract[] to agree").

express joint venture/partnership agreement was formed.[9]
Plaintiffs' evidence also establishes a genuine dispute
of material fact as to whether an implied joint
venture/partnership agreement was formed.[10]

In light of the above, Defendants' Motion for
Summary Judgment with regard to Plaintiffs' first and
second claims for breach of an express or implied joint
venture/partnership agreement is **DENIED.**

2.  Breach of Fiduciary Duty Owed to Joint
    Venturers or Partners & Constructive Fraud
    Claims

Plaintiffs' third and fourth claims assert breach
of fiduciary duty owed to joint venturers or partners

---

[9] See Interserve, Inc. v. Fusion Garage PTE. Ltd., No. C 09-5812 RS (PVT), 2010 WL 3339520, at *6 (N.D. Cal. Aug. 24, 2010) ("While it may be true that the parties never reached a meeting of the minds on how the business would operate on an ongoing basis, their cooperative efforts in developing the product were sufficient to give rise to an obligation on both parties' part not to usurp the fruits of those efforts." (citing Holmes, 88 Cal. Rptr. 2d at 134 for the Holmes court's rejection of the contention that a partnership agreement was too indefinite when the evidence showed that the parties had agreed, "It's going to be our baby, and we're going to work on it together," and had in fact done so)).

[10] The parties' statements and conduct could support a reasonable jury's finding that the parties "'manifested their mutual intent to take [an] idea and make it concrete by forming a company and engaging in the business together'" and took "'subsequent acts . . . [to] work[] out the details.'" Gross, 33 Cal. Rptr. at 437; see Johnson v. Am. Cas. Co. of Reading, Pa., 408 F. App'x 76, 79 (9th Cir. 2011) (stating that because "a reasonable jury could find" plaintiff's material facts to be true, summary judgment was "improper"); Sillerman Decl., Exs. RS2-RS9; Paolo Moreno Decl., Exs. PM2-PM5; Hueston Decl., Ex. JK1 (Sillerman Dep.).

1   and constructive fraud.

2          a.   *Breach of Fiduciary Duty*

3          Under California law, "[t]he elements of a claim

4   for breach of fiduciary duty are (1) the existence of a

5   fiduciary relationship, (2) its breach, and (3) damage

6   proximately caused by that breach." <u>Love v. The Mail</u>

7   <u>on Sunday</u>, 489 F. Supp. 2d 1100, 1104 (C.D. Cal. 2007)

8   (citing <u>City of Atascadero v. Merrill Lynch, Pierce,</u>

9   <u>Fenner & Smith, Inc.</u>, 68 Cal. App. 4th 445, 483

10  (1998)); <u>see also</u> <u>Knox v. Dean</u>, 205 Cal. App. 4th 417,

11  433 (2012).  "In both joint ventures and partnerships,

12  the parties owe fiduciary duties to each other."

13  <u>Interserve, Inc. v. Fusion Garage PTE. Ltd.</u>, No. C 09-

14  5812 RS (PVT), 2010 WL 3339520, at *4 (N.D. Cal. Aug.

15  24, 2010) (citing <u>Leff v. Gunter</u>, 189 Cal. Rptr. 377,

16  381 (Ct. App. 1983)).

17         Defendants argue that Plaintiffs' claims for breach

18  of fiduciary duty and constructive fraud should be

19  dismissed because no fiduciary duty exists when no

20  joint venture/partnership agreement exists.  But, as

21  discussed above, Plaintiffs' first and second claims

22  asserting a joint venture/partnership agreement

23  survive, and, thus, Plaintiffs' evidence establishes a

24  genuine dispute of material fact as to whether a

25  fiduciary relationship exists among the parties.

26  Plaintiffs' evidence establishes a genuine dispute of

27  material fact regarding also the second and third

28

prongs of their claim for breach of fiduciary duty.[11]

        b.   *Constructive Fraud*

Constructive fraud "depends on the existence of a fiduciary relationship of some kind." <u>Beco Dairy Automation, Inc. v. Global Tech Sys., Inc.</u>, No. CV-F-12-1310 LJO SMS, 2012 WL 4052066, at *8 (E.D. Cal. Sept. 14, 2012). Constructive fraud under California law is "'any breach of duty which, without actual fraudulent intent . . .[,] gains an advantage to the person at fault . . . by misleading another to his or her prejudice.'" <u>Id.</u> (citing Cal. Corp. Code § 1573).[12]

Upon review of the evidence, and as exhibited in part by the above facts, Plaintiffs provide ample evidence establishing a genuine dispute of material fact as to the elements of constructive fraud. As such, the Court **DENIES** Defendant's Motion for Summary

---

[11] <u>See, e.g.</u>, Compl. ¶¶ 55-56; Pls.' Facts ¶¶ 158, 161; Sillerman Dep. at 92:4-93:23 (Hueston Decl., Ex. JH1 at 019); <u>id.</u> at 203:11-238:17 (Hueston Decl., Ex. JH1 at 033-035); Defs.' Resps. to Pl. Vavra's First Interrogs. No. 55 (stating compensation of SFX officers from January 1, 2012, to the present); see <u>Pellegrini v. Weiss</u>, 81 Cal. Rptr. 3d 387, 397 (Ct. App. 2008) ("[P]artners or joint venturers have a fiduciary duty to act with the highest good faith towards each other regarding affairs of the partnership or joint venture."); <u>see also</u> <u>Boyd v. Bevilacqua</u>, 55 Cal. Rptr. 610, 247 Cal. App. 2d 272, 288 (Ct. App. 1966) (noting that where a joint venture / partnership agreement "is entirely repudiated by one of the parties and the fruits of the venture are sought to be appropriated," breach of fiduciary duty can be established "without determining all the terms of the agreement with exactness").

[12] <u>See also</u> <u>Boyd</u>, 247 Cal. App. 2d at 290 ("Constructive fraud frequently consists in the breach of a duty arising out of a confidential or fiduciary relationship.").

Judgment as to Plaintiff's third and fourth claims for
breach of fiduciary duty and constructive fraud.

　　3.　Breach of Express and Implied Contract,
　　　　Promissory Estoppel, and Quantum Meruit Claims

　　Plaintiffs' fifth, sixth, seventh, and eleventh
claims assert breach of contract, breach of implied
contract, promissory estoppel, and quantum meruit.

Breach of Express Contract

　　"'A cause of action for damages for breach of
contract is comprised of the following elements: (1)
the contract, (2) plaintiff's performance or excuse for
nonperformance, (3) defendant's breach, and (4) the
resulting damages to plaintiff.'" Agam v. Gavra, 186
Cal. Rptr. 3d 295, 305 (Ct. App. 2015).

　　Upon review of the evidence, and as exhibited in
part by the above facts, Plaintiffs' evidence genuinely
disputes the existence of a contract, Plaintiffs'
performance, Defendants' breach, and Plaintiffs'
resulting injury. See, e.g., Paolo Moreno Decl. ¶¶ 29-
34 (citing Exs. PM14-25); Sillerman Decl., Exs. RS3-
RS5; Sillerman Dep. (Hueston Decl., Ex. JH1).

Breach of Implied Contract

　　"A cause of action for breach of implied contract
has the same elements as does a cause of action for
breach of contract, except that the promise is not
expressed in words but is implied from the promisor's
conduct." Yari v. Producers Guild of Am., Inc., 161
Cal. App. 4th 172, 182 (Ct. App. 2008). "'California

17

law allows for recovery for the breach of an implied-in-fact contract when the recipient of a valuable idea accepts the information knowing that compensation is expected, and subsequently uses the idea without paying for it.'"  Green v. Schwarzenegger, No. CV 93-5893-WMB, 1995 WL 874191 (C.D. Cal. 1995).

Plaintiffs provide evidence that they shared their valuable business plan with Defendants and performed valuable services for Defendants at Defendants' request and with the expectation of being compensated, and that Plaintiffs were never compensated for their performance.  See, e.g., Paolo Moreno Decl. ¶¶ 22-41; Sillerman Dep. 92:4-93:23; id. at 238:20-13. Plaintiffs' evidence creates a genuine dispute of material fact as to whether an implied contract was formed.

### Promissory Estoppel

The elements of promissory estoppel are "'(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance [that is] both reasonable and foreseeable; and (4) . . . injury [based on that] reliance.'" US Ecology, 28 Cal. Rptr. 3d at 905.

Plaintiffs provide evidence that Defendants made clear and unambiguous promises to Plaintiffs; that Plaintiffs reasonably and foreseeably relied on Defendants' promises; and that Plaintiffs were injured

by their reliance on the promises because Plaintiffs were never compensated, as expected, for the valuable services Plaintiffs performed for Defendants.  See, e.g., Paolo Moreno Decl. ¶¶ 22-41; Sillerman Dep. (Hueston Decl., Ex. JH1); Sillerman Decl., Ex. RS2-RS5. As such, Plaintiffs' evidence establishes a genuine dispute of material fact as to whether the elements of promissory estoppel are satisfied.

### Quantum Meruit

"The elements of quantum meruit are: (1) that the plaintiff performed certain services for the defendant, (2) the[] reasonable value [of the services can be determined], (3) [the services] were rendered at defendant's request, and (4) [the services] are unpaid." Cedars Sinai Med. Ctr. v. Mid-W. Nat'l Life Ins. Co., 118 F. Supp. 2d 1002 (C.D. Cal. 2000) (citing Haggerty v. Warner, 115 Cal. App. 2d 468, 475 (Ct. App. 1953)).

As discussed above, Plaintiffs' evidence establishes a genuine dispute of material fact as to whether the elements of quantum meruit are satisfied.

In light of the above, the Court **DENIES** Defendants' Motion for Summary Judgment as to Plaintiff's fifth, sixth, seventh, and eleventh claims asserting breach of contract, breach of implied contract, promissory estoppel, and quantum meruit.

4.   Fraudulent Inducement and Promissory Fraud

<u>Claims</u>

Plaintiffs' eighth and ninth claims are fraudulent inducement and promissory fraud.

Fraud requires "(a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage." <u>Hinesley v. Oakshade Town Ctr.</u>, 37 Cal. Rptr. 3d 364, 367 (Ct. App. 2005).

Fraud in the inducement "is a subset of the tort of fraud" and "occurs when the promisor knows what he is signing [or agreeing to][,] but [the promisor's] consent is induced by fraud" such that "mutual assent is present and a contract is formed," but, due to the fraud, the contract is "voidable." <u>Id.</u> Promissory fraud is "a subspecies of the action for fraud" and is supported by evidence that the "misrepresentation" was a promise made without the intent to perform that promise. <u>Lazar v. Sup. Crt.</u>, 909 P.2d 981, 984-85 (Cal. 1996); <u>see id.</u> ("An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract.").

Plaintiffs' evidence establishes a genuine issue of material fact for each element of fraud. Plaintiffs provide evidence that Defendants made misrepresentations. <u>See, e.g.</u>, Sillerman Decl. 167:4-169:18; <u>id.</u> 129:13-138:10. Plaintiffs also provide

circumstantial evidence that could support a reasonable jury's finding that Defendants made promises to Plaintiffs to induce them to work for SFX that Defendants did not intend to keep.  See, e.g., id. at 129:13-138:10; Paolo Moreno Decl. ¶¶ 22-41; Sillerman Decl. 92:4-93:8; id., Ex. RS4.  Plaintiffs provide evidence that would support a reasonable jury's finding that Plaintiff's reliance on Defendants' misrepresentations was justifiable.  See, e.g., Paolo Decl.; Sillerman Decl., Exs. RS2-RS5.  Finally, Plaintiffs provide evidence supporting injury resulting from their reliance.  See, e.g., Defs.' Resps. to Pl. Vavra's First Interoggs. No. 55; Paolo Decl.; Sillerman Dep. (Hueston Decl., JH1).

As such, the Court **DENIES** Defendants' Motion for Summary Judgment as to Plaintiffs' eighth and ninth claims for fraudulent inducement and promissory fraud.

5. Unfair Competition Claim, Cal. Bus. & Prof. Code § 17200

Finally, Plaintiff's tenth claim is for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.

"California's Unfair Competition Law ("UCL") prohibits any 'unlawful, unfair or fraudulent business act or practice.'" Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008); Cal. Bus. & Prof. Code § 17200.  Plaintiffs' Complaint asserts that Defendants

actions constitute "unfair and unlawful business practices."  Compl. ¶ 116.

Unlawful

"Unlawful business practices [under the UCL] are 'anything that can properly be called a business practice and that at the same time is forbidden by law . . . be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court-made,' where court-made law is, 'for example a violation of a prior court order.'" Tervon, LLC v. Jani-King of Cal., Inc., No. 14-cv-2648 BAS (JMA), 2015 WL 4135162, at *7 (S.D. Cal. July 8, 2015) (quoting Nat'l Rural Telecomm. Co-op v. DIRECTV, Inc., 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003)).  While an unlawful business act or practice cannot be based on "common law violations such as breach of contract," "[c]ourts have found that facts supporting a violation of [Cal.] Civil Code § 1709[13] sufficiently state a cause of action under Cal. Bus. & Prof. Code § 17200." Id. (citing Whitehurst v. Bank2 Native Am. Home Lending, LLC, No. 14-cv-00318-TLN-AC, 2014 WL 4635387, at *8 (E.D. Cal. Sept. 10, 2014)). The Supreme Court of California has clearly stated that the UCL's scope, which "is broad," encompasses "actual

---

[13] California Civil Code section 1709, which "codif[ies] in part the common law tort of fraud," states that a person who "wilfully deceives another with intent to induce him to alter his position to his injury or risk" is "liable for any damage which [the victim] thereby suffers." Cal. Civ. Code § 1709; Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008).

fraud as defined in and prohibited by Civil Code section 1572 and deceit as defined in and prohibited by Civil Code sections 1709 and 1710." <u>Kasky v. Nike, Inc.</u>, 45 P.3d 243, 249 (Cal. 2002).

Because, as discussed above, Plaintiffs' evidence creates a genuine dispute of material fact regarding fraud, including fraud as defined under Cal. Civ. Code §§ 1572, 1709, and 1710, Plaintiffs' evidence creates a genuine dispute of material fact regarding Plaintiffs' UCL claim under the "unlawful" prong.

As such, the Court **DENIES** Defendants' Motion for Summary Judgment as to Plaintiffs' claim for violation of Cal. Bus. & Prof. Code §§ 17200 et seq.

### IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Defendants' Motion for Summary Judgment [61] in its entirety.

**IT IS SO ORDERED.**

DATED: July 29, 2015

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge